IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| PRISCILLA S. CATES, Individually and as the administrator of the Estate of Bobby Ray Cates, | § § § § | |
| Plaintiff, | § § | No. 7:00-CV-0121-R |
| v. | § § | ECF |
| MATTHEW SCOTT CREAMER, et al., | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before this Court is the defendant Hertz Corporation's ("Hertz") motion for summary judgment (doc. 29), the grant of which was vacated and remanded to this Court for further consideration. Also before this Court are two motions for judgment (docs. 113 & 127) filed by the plaintiff Priscilla S. Cates ("Cates") and Hertz, which are related to the remand referenced above. For the reasons stated herein, Cates' motion (doc. 113) is granted and Hertz's motions (docs. 29 & 127) are denied.

### I.

This case involves a car accident that took place in Texas. While driving through Texas, the defendant driver Matthew Scott Creamer ("Creamer"), a resident of Florida, momentarily fell asleep at the wheel of a Hertz rental vehicle, which led to an accident severely injuring Bobby Cates, a Texas resident. The vehicle involved in the accident was registered and licensed in Florida and the lease for the vehicle with Hertz was executed in Florida. The rental agreement referenced Florida's financial responsibility and "no fault" personal injury laws but it did not contain a choice of law

1

provision. Hertz is incorporated in Delaware and its principal place of business is in New Jersey.

Cates filed a diversity suit in the Northern District of Texas on June 29, 2000. Cates sued Creamer for negligent operation of a motor vehicle under Texas law, and sought to be compensated for medical expenses and lost wages. Cates also sued Hertz under Florida's dangerous instrumentality doctrine.[1] Texas does not recognize the dangerous instrumentality doctrine and has adopted the doctrine of negligent entrustment.[2] Hertz moved for summary judgment, contending that Texas law controls the vicarious liability issue. This Court, applying Texas law, granted Hertz's summary judgment motion exonerating Hertz from liability. The first jury found no negligence and returned a verdict for Creamer. This Court subsequently granted a new trial and the second jury found Creamer 70% at fault for the accident and awarded Cates damages. Cates sought on appeal to collect the award from Hertz based on Florida law of vicarious liability. Creamer sought on appeal to reinstate the first jury's verdict.

On November 28, 2005, the United States Court of Appeals for the Fifth Circuit affirmed the judgment against Creamer, but vacated and remanded this Court's grant of summary judgment for Hertz. The Fifth Circuit stated, "[T]he district court erred in applying Texas law to the issue of Hertz's vicarious liability. Because the district court did not conduct a vicarious liability inquiry under Florida law, we remand this case to it for determination, under Florida law, of Hertz's

---

[1] Florida's dangerous instrumentality doctrine holds an owner/lessor of a vehicle vicariously liable when the owner/lessor entrusts the vehicle to a lessee whose negligent operation causes damage to another. *Aurbach v. Gallina*, 753 So.2d 60, 62 (Fla. 2000).

[2] The elements of negligent entrustment are: "(1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed; (4) that the driver was negligent on the occasion in question and (5) the driver's negligence proximately caused the accident." *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987).

vicarious liability for Cates's judgment against Creamer." *Cates v. Creamer*, 431 F.3d 456, 466 (5th Cir. 2005). The Fifth Circuit specifically instructed that "[o]n remand, the district court should focus particularly on whether the Florida law of vicarious liability may be applied to benefit non-Florida residents in a situation such as the case at hand." *Cates*, 431 F.3d at 466. Furthermore, the Fifth Circuit observed, "It seems that the district court will have to make an *Erie* guess to resolve the question, as no Florida precedent exists to resolve the question." *Id*.

In reviewing this Court's choice of law determination, the Fifth Circuit stated that the interest analysis of § 6 of Restatement (Second) on Conflict of laws provided little impact on the Fifth Circuit's decision because the interests of neither Texas or Florida clearly predominate over the other. *Id*. at 465. The Fifth Circuit observed:

> Texas has only a minimal interest in having its law apply to the vicarious liability issue. Texas's interest in avoiding judgments against defendant bailors is not implicated here because Hertz is not a Texas corporation and did not conduct the business relating to this rental agreement in Texas. Furthermore, although Texas has the greater interest in seeing Cates compensated for her husband's injuries and in avoiding the burden of providing medical care for Mr. Cates, it is Florida law, not Texas law, which offers greater protection of those interests.

*Id*. With respect to Florida, the Fifth Circuit stated:

> Florida's interest in having its law applied to the vicarious liability issue in this case, however, are also minimal. Florida's dangerous instrumentality doctrine protects plaintiffs from impecunious drivers by imposing liability on the owners of the vehicles, but here, the plaintiff is not a Florida resident. Further, although Florida may have an interest in regulating the conduct of vehicle bailors to reduce the incidence of accidents, we are not persuaded that that interest extends beyond Florida's borders.

*Id*. at 465. However, the Fifth Circuit's analysis of the most significant relationship test of §§ 145 and 174 persuaded it that "Florida clearly has the greater connection to the facts and circumstances as they relate to the vicarious liability issue." *Id*. at 465-66. The Fifth Circuit explained:

3

> The most relevant relationship is that which arises from the lease of the automobile. Although Cates may have a real interest in the lease, Cates, a Texas resident, essentially has no relationship with the lease. Texas has no relationship with the lease, and Hertz has no relationship with Texas concerning this lease. Creamer has no relationship with the state of Texas arising from the lease. Creamer, however, is a Florida resident and is a party to the lease. Hertz is the other party to the lease and does its relevant business in Florida. Florida is the situs where the lease was executed. In short, Florida, not Texas, has the most significant relationship to the issue of Hertz's vicarious liability.

*Id*. at 465. Hence, the Fifth Circuit conducted its own choice of law inquiry and determined that Florida law should be applied to determined whether Hertz should be held vicariously liable to Cates. *See id*. at 466 ("Our own analysis . . . leads us to conclude that Florida, not Texas, law should apply to the vicarious liability issue because the bailment relationship, which is the basis for vicarious liability here, is centered in Florida and because § 174 specifically states that a bailment relationship is an adequate basis for the imposition of vicarious liability."). Therefore, choice of law is no longer an issue before this Court.

Because the Fifth Circuit vacated and remanded this Court's grant of summary judgment for Hertz with instructions to revisit its analysis, Hertz's July 3, 2001 summary judgment motion is before this Court for consideration. On October 4, 2006, Cates filed her motion for judgment, asking this Court to apply the dangerous instrumentality doctrine and enter a new judgment making Hertz jointly and severally liable for the judgment. Pl.'s Mot. for J. at 2. On December 15, 2006, Hertz filed its motion for judgment asking this Court to enter a new judgment, based on its *Erie*-guess analysis of Florida law, and dismiss Hertz with prejudice. Hertz's Mot. for J. at 2.

## II.

"Adopted in 1920, Florida's dangerous instrumentality doctrine imposes strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts that motor vehicle to an

4

individual whose negligent operation causes damage to another." *Aurbach v. Gallina*, 753 So.2d 60, 62 (Fla. 2000) (citing *S. Cotton Oil Co. v. Anderson*, 80 Fla. 441, 468 (1920)). As explained by the Florida supreme court in *Anderson*, "one who authorizes and permits an instrumentality that is peculiarly dangerous in its operation to be used by another on the public highway is liable in damages for injuries to third persons caused by the negligent operation of such instrumentality on the highway by one so authorized by the owner." *Anderson*, 80 Fla. at 468. Seventy years after the Florida supreme court issued its opinion in *Anderson*, the Florida supreme court in *Kraemer v. Gen. Motors Acceptance Corp.*, 572 So.2d 1363, 1365 (Fla. 1990), "reaffirmed the viability of the dangerous instrumentality doctrine and the important policies that led to its adoption in Florida." *Aurbach*, 753, So.2d at 62. The Florida supreme court stated in *Kraemer*:

> The dangerous instrumentality doctrine seeks to provide greater financial responsibility to pay for the carnage on our roads. It is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation. If Florida's traffic problems were sufficient to prompt its adoption in 1920, there is all the more reason for its application to today's high-speed travel upon crowded highways. The dangerous instrumentality doctrine is unique to Florida and has been applied with very few exceptions.

*Kraemer*, 572 So.2d at 1365. The Florida "legislature has created a statutory exception for automobiles leased under long-term leases if the lessee meets certain insurance requirements." *Estate of Villanueva ex rel. Villanueva v. Youngblood*, 927 So.2d 955, 957 (Fla. 2d DCA 2006) (citing § 324.021(9)(b), Fla. Stat. (2002)). "The courts have created three additional exceptions: the 'shop' exception . . . the 'theft or conversion' exception . . . and the 'bare naked title' exception . . . ." *Id.* (citing *Castillo v. Bickley*, 363 So.2d 792 (Fla. 1978); *Hertz Corp. v. Jackson*, 617 So.2d 1051 (Fla. 1993); *Aurbach*, 753 So.2d at 62).

"It appears that Florida is the only jurisdiction that imposes, under the common law dangerous instrumentality doctrine, strict vicarious liability upon the owner of a motor vehicle who voluntarily entrusts it to another." *Jackson*, 617 So.2d at 1053 (citing *Susco Car Rental Sys. v. Leonard*, 112 So.2d 832, 835-36 (Fla. 1959); *Anderson*, 80 Fla. at 441). "This form of vicarious liability is not based on respondent superior or an agency conception, but on the practical fact that the owner of an instrumentality which [has] the capability of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent." *Meister v. Fisher*, 462 So.2d 1072 (1984) (quoting *Jordan v. Kelson*, 299 So.2d 109, 111 (Fla. 4th DCA 1974)). Hence, "under the dangerous instrumentality doctrine prevailing in Florida, both the owners and operators of motor vehicles are jointly and severally liable for the damages resulting from the negligent use or operation thereof." *Gordon v. Phoenix Ins. Co.*, 242 So.2d 485, 487 (Fla. 1st DCA 1970).

The Fifth Circuit instructed this Court to apply Florida law in the vicarious liability analysis but left open for this Court to determine whether Florida would extend vicarious liability to a car rental company conducting business in Florida for an injury caused by a Florida resident lessee wherein the event causing the injury took place outside of Florida to a non-Florida resident. *See Cates*, 431 F.3d at 466. As observed by Hertz, "no Florida court has directly addressed the issue [of] whether the Florida law of vicarious liability may be applied to benefit a non-Florida resident injured out-of-state." Hertz's Resp. at 5. Therefore, this Court shall make an *Erie* guess as instructed by the Fifth Circuit. *See Cates*, 431 F.3d at 466. In making its *Erie* guess, this Court looks to available Florida cases as well as other relevant legal sources. *See Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006) ("If no final disposition is directly on point, we must make

6

an '*Erie*-guess', predicting how that court would rule. . . . We make our forecast based on (1) decisions of the [Florida] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Florida] Supreme Court decisions on related issues, (3) dicta by the [Florida] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Florida] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.") (citing *Centennial Ins. Co. v. Ryder Truck Rental, Inc.,* 149 F.3d 378, 382 (5th Cir. 1998); *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 807 (5th Cir. 1997)); 19 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4507, 100-03 ("In vicariously creating state law . . . , the federal court may consider all available legal sources, including the Restatements of law, treatises, law review commentaries, decisions from other jurisdiction whose doctrinal approach is substantially the same, and 'the majority rule.'"). Florida has considered decisions from other jurisdictions in determining the reach of its dangerous instrumentality doctrine. *See Meister*, 462 So.2d at 1072. In coming to its determination that vehicles other than automobiles can qualify as dangerous instrumentalities, the Florida supreme court considered decisions and statutes from other jurisdictions. *See id*. ("[A]lthough we have found no cases from other jurisdictions dealing with the precise issue involved here, those states which have enacted legislation in this area have not limited liability to the owner of an automobile. Instead, all of the statutes speak in terms of the owner of a motor vehicle.") (citing CAL. VEH. CODE ANN. § 17150 (Deering 1972); IDAHO CODE § 49-1404 (1980); MICH. STAT. ANN. § 9.2101 (Callaghan 1981) [M.C.L.A. § 257.401]; N.Y. VEH. & TRAF. LAW § 388 (Consol. 1976)).

In *Stathis v. Nat'l Car Rental Sys., Inc.*, 109 F. Supp. 2d 55 (D. Mass. 2000), a Massachusetts

resident was injured in Massachusetts by a vehicle driven by a citizen of India, who at the time of the accident was working and living in Maine. *Id.* at 55. The negligent driver, Vijay Sukhadeve "was licensed to drive by Maine and had rented the car in Maine from National. The car was owned by National and registered in Maine. The terms of the rental agreement allowed Sukhadeve to operate the vehicle in states other than Maine." *Id.* The United States District Court for the District of Massachusetts, in applying Maine law, determined that National Car Rental was "jointly and severally liable pursuant to Maine law for any damages caused by the negligence of the driver of the rental vehicle Vijay Sukhadeve." *Id.* As Cates points out, Maine is one of the jurisdictions that the Fifth Circuit noted "would likely impose vicarious liability on automobile lessors in the same manner that Florida does." *Cates*, 431 F.3d at 463 (citing ME. REV. STAT. ANN. 29-A § 1652); Pl.'s Mot. for J. at 4.

In *Erickson v. Hertz Corp.*, No. Civ. 05-1690, 2006 WL 1004385, at *5 (D. Minn. 2006), Minnesota residents were injured in North Carolina by a Hertz rental vehicle that was rented in Florida. *Id.* The plaintiffs in *Erickson* argued that "Hertz' liability to Plaintiffs stems from the rental contract entered into in the state of Florida. The mere happenstance that the accident took place in North Carolina has no bearing on Hertz's liability to Plaintiffs." *Id.* Hertz asserted in that case that the cases cited by the plaintiffs are distinguishable since they do not involve a fact situation in which the injured party is a non-citizen of Florida. *Id.* The *Erickson* court's *Erie* inquiry led it to conclude that a Florida court would extend vicarious liability to benefit a non-Florida resident. *Id.* The *Erickson* court explained:

> Whether or not non-residents may benefit from Florida's vicarious liability law remains [sic] has yet to be decided by the Florida courts. . . . However, in a decision involving a rental car rented in Texas and driven by Texas residents, that was involved in an accident in Florida, the court held that where the pertinent issue is

vicarious liability and the applicability of the dangerous instrumentality law, the forum in which the car was rented should govern. . . . This Court thus finds that a Florida court would apply its vicarious liability laws to a non-resident, where the rental transaction was entered into in Florida.

*Id.* (citing *Wal-Mart Stores, Inc. v. Budget Rent-A-Car Sys.*, 567 So.2d 918, 922 (Fla. 1st DCA 1990); *Deemer v. Budget Rent-A-Car Sys., Inc.*, 704 So.2d 133, 134 (Fla. 1st DCA 1997)).

The *Erickson* court cited the *Deemer* decision for the proposition that the forum in which the car was rented should govern where the pertinent issue is vicarious liability and the applicability of the dangerous instrumentality doctrine. *Deemer*, 704 So.2d at 134. In *Deemer*, the appellant challenged the trial court's ruling that under the significant relationship test, Texas law rather than Florida law applied with respect to the issue of vicarious liability. *Id*. The *Deemer* court looked to *Stallworth v. Hospitality Rentals*, *Inc.*, 515 So.2d 413 (Fla. 1st DCA 1987) in making its decision. *Id*. The *Deemer* court quoted the *Stallworth* decision which stated, "'[u]nquestionably, the most important contact with respect to Hospitality's vicarious liability to this Florida passenger is the significant relationship the state of Florida has to this rental transaction involving one of Hospitality's automobiles . . . .'" *Deemer*, 704 So.2d at 134 (quoting *Stallworth*, 515 So.2d at 417). The *Deemer* court went on to say, "In this case, the pertinent issue is also vicarious liability and the applicability of the dangerous instrumentality doctrine. While the injuries and the conduct causing the injuries occurred in Florida, the rental transaction took place in Texas; Budget rented a vehicle registered and licensed in Texas and the vehicle was to be returned to Texas. The facts with regard to the rental agreement in the instant case are virtually the same as of those in *Stallworth*, except in relation to Texas rather than to Florida. We are unable to distinguish this case from *Stallworth*, and therefore affirm." *Id*.

In *Stallworth*, the First District Court of Appeal of Florida, in facing a conflict of laws

9

question concerning the vicarious liability of a Florida car rental agency to a Florida plaintiff arising out of an automobile accident that took place in Louisiana, determined that Florida law should be applied to hold the car rental agency vicariously liable. *Stallworth*, 515 So.2d at 414. The *Stallworth* court noted, "Because both parties are Florida residents, and in view of Florida's significant relationships to the rental transaction and the occurrence, Florida has a definite interest in seeing that the interests sought to be furthered by the dangerous instrumentality doctrine are protected in this situation. To that extent, the application of Florida law to these circumstances furthers the policy of the forum state." *Id*. at 417 n.4. Also in the *Wal-Mart* decision, the First District Court of Appeal of Florida, in facing a choice of law question, decided to apply Florida's dangerous instrumentality doctrine to hold a rental company doing business in Florida vicariously liable for an injury that occurred in Georgia to a Florida resident as a result of the negligence of a Florida resident. *Wal-Mart Stores, Inc.*, 567 So.2d at 919. However, both *Wal-Mart* and *Stallworth* limited their holdings to the facts presented, specifically leaving open the question of a Florida rental agency's vicarious liability to residents of other states. *See Stallworth*, 515 So.2d at 418 ("Our holding today is necessarily limited to the specific facts this appeal presented. Whether the same choice of law should be made regarding the vicarious liability of a Florida car rental agency in an action for injuries to residents of another state is a matter we must necessarily leave open until that case is presented."); *Wal-Mart Stores, Inc.*, 567 So.2d at 922 ("As in *Stallworth*, we leave open the question of whether the same choice of law should be made regarding the vicarious liability of a Florida rental agency to residents of other states in other cases.").

In *Meister v. Fisher*, the Florida supreme court addressed the Fourth District Court of Appeal's certified question as to whether golf carts should be included in the dangerous

instrumentality doctrine. *Meister*, 462 So.2d at 1071. The *Meister* court construed the dangerous instrumentality doctrine broadly and answered in the affirmative. *Id*. at 1073. The *Meister* court noted that the golf cart is clearly a motor vehicle and further, "the vehicle [] being operated on the public highways of this state is likewise not required before the dangerous instrumentality doctrine can come into play" even though "most of the Florida decisions applying [the dangerous instrumentality] doctrine have made reference to the fact that the vehicle was being operated on the public highways," and "[s]ome of the earlier cases even limited the doctrine to those vehicles operated on the public highways." *Id*. at 1073 (citing *Crenshaw Bros. Produce Co. v. Harper*, 142 Fla. 27 (1940); *Lynch v. Walker*, 159 Fla. 188 (1947)). The *Meister* court explained:

> We see neither reason or logic in the view that a motor vehicle in operation, which is a dangerous instrumentality while being operated upon the public highway, somehow ceases to be a dangerous instrumentality the instant the driver causes it to turn off the public street or highway and onto a private drive or other private property. . . . [C]ommon sense tells us that in all other respects such vehicle while in motion is equally dangerous to persons and property no matter where it is operated, and to make the owner's liability for his permittee's negligence in the operation of such vehicle depend upon whether the vehicle is on or off the public highway simply leads to absurd results.

*Id*. at 1073. The Florida supreme court in *Meister* also cited to a Fourth Circuit District Court decision, *Jordan v. Kelson*, in explaining its holding in *Anderson v. Southern Cotton Oil* Co. *Meister*, 462 So.2d at 1072. The *Meister* court stated:

> This Court applied the dangerous-instrumentality doctrine to automobiles in *Anderson v. Southern Cotton Oil Co.* []. In that case we held that: This form of vicarious liability is not based on respondent superior or an agency conception, but on the practical fact that the owner of an instrumentality which [has] the capability of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent.

*Id*. (quoting *Jordan*, 299 So.2d at 111).

In *Burch v. Sun State Ford, Inc.*, 864 So.2d 466, 471 (Fla. 5th DCA 2004), the Fifth District

Court of Appeal of Florida reversed the lower court's determination that the vehicle owner was not vicariously liable under the dangerous instrumentality doctrine because the driver's manner of driving was deemed an intentional misconduct, rather than a negligent conduct. *Id*. at 468. The *Burch* court rejected the proposition that any type of intentional misuse of a vehicle would result in the severance of liability under the dangerous instrumentality doctrine because "such a proposition is inconsistent with the Florida Supreme Court's decisions that created and refined the doctrine, the established tort precepts upon which the doctrine was based, and the policies underlying the doctrine." *Id*. at 470. The *Burch* court went on to say:

> [A] distinction based on the manner of driving contravenes the policies that underlie the [dangerous instrumentality] doctrine: to provide greater financial responsibility to pay for injuries and to encourage owners to entrust their vehicles to responsible drivers, thereby reducing the risk of injuries to others. Absent any countervailing policy for allowing an owner to escape liability when, instead of entrusting his car to a negligent driver, he entrusts it to a reckless one, we fail to see why the doctrine should be limited in the fashion urged by Sun State.

*Id*. at 471. Thus although the doctrine has typically been construed as applicable in negligence contexts, the *Burch* court deemed the doctrine applicable in vicarious liability situations involving intentional misconduct.

Upon consideration, this Court concludes that the Florida supreme court would apply its dangerous instrumentality doctrine in a situation such as the case at hand. The application of the doctrine advances the policy considerations underlying the doctrine. As plaintiff states:

> The point in time when Florida's dangerous instrumentality doctrine has its desired deterrent effect is when the lessor makes the decision to lease a vehicle to a lessee. The fact that the lessee may then drive the vehicle out of Florida and injure a non-resident does not diminish Florida's interest in seeing that Florida lessors not lease their vehicles to irresponsible lessees. To refuse to apply Florida's law based on the happenstance that the accident occurred after the irresponsible lessee managed to make it out of Florida would necessarily interfere with Florida's stated interest in regulating the Florida-based conduct of owners that lease "dangerous

12

instrumentalities" in Florida.

Pl.'s Mot. for J. at 5. Pursuant to the lease agreement, the Creamers could drive the vehicle anywhere in the United States and Canada, but they were obligated to return the vehicle to Florida. Furthermore, the lease was executed in Florida and the vehicle was obtained in Florida. Defendant Creamer necessarily had to drive the rented vehicle on Florida roads in order to reach his destination in Texas and to return the vehicle in Florida. Florida's interest in protecting its roads and residents is furthered by the extra caution that is prompted by strict liability. Precluding vicarious liability in instances where the lessee takes the vehicle out of Florida and injure non-Florida residents would only have the effect of decreasing the caution exercised while entrusting vehicles that will travel on Florida roads.

Furthermore, Creamer was authorized by Hertz to operate the vehicle outside of Florida. Florida's implementation of the dangerous instrumentality doctrine was premised upon the idea that it is in the interest of justice to have the lessor/owner shoulder any financial responsibility caused by the vehicle's misuse. As explained by the Florida Supreme Court, the dangerous instrumentality doctrine is based "on the practical fact that the owner of an instrumentality which [has] the capability of causing death or destruction should in justice answer for misuse of this instrumentality by anyone operating it with his knowledge and consent." *Meister*, 462 So.2d at 1072 (quoting *Jordan*, 299 So.2d at 111). *Cf. Kraemer*, 572 So.2d at 1363 ("The dangerous instrumentality doctrine . . . is premised upon the theory that the one who originates the danger by entrusting the automobile to another is in the best position to make certain that there will be adequate resources with which to pay the damages caused by its negligent operation."). With Hertz's knowledge and consent, Cates drove the dangerous instrumentality out of Florida and into Texas. Allowing the

13

lessor to escape liability in situations where the lessee takes the vehicle outside of Florida and injure a non-Florida resident seems contrary to the intent and concerns expressed by the Florida supreme court. Considering that pursuant to the lease agreement, the Creamers were permitted to drive the rental vehicle outside of Florida, making Hertz shoulder the financial repercussions of any liabilities that arose as a result of the vehicle's misuse outside of Florida appears to be in line with the policy considerations sought to be furthered by the doctrine. *See Stallworth*, 515 So.2d at 417 n.4 ("The basic policy underlying the Florida dangerous instrumentality doctrine is to place the responsibility for the negligent operation of an automobile squarely upon the owner who permitted its use. . . . The policy of fixing such responsibility with certainty upon the owner, who may then obtain insurance against such potential liability, serves to better protect an injured plaintiff from being unable to recover from an insolvent defendant driver whose negligence caused the injury."). Hence, this Court's *Erie* analysis leads it to conclude that where the rental transaction is entered into in Florida, the parties to the contract have ties to Florida, and where the terms of the agreement necessitate travel on Florida roads, the Florida supreme court would apply its dangerous instrumentality doctrine to benefit a non-resident.

Hertz contends that if this Court finds that Florida's dangerous instrumentality doctrine is applicable to the facts at hand, the statutory exception applies, limiting Hertz's monetary liability to Cates. Def.'s Resp. at 18. Cates, on the other hand, contends that Hertz cannot rely on Florida's subsequently-enacted damage cap. Pl.'s Reply at 8. Because the accident at issue took place on June 30, 1998 and the statutory exception at issue did not take effect until July 1, 1999, Cates argues that the exception is not applicable. *Id*. at 14-15. Hertz responds that the statute should be applied retroactively to this case. Def.'s Sur-Reply at 17-18.

14

Section 324.021(9)(b)(2) of the Florida Statutes limits a vehicle lessor's financial liability in contexts where the agreement to rent or lease the vehicle is less than one year. FLA. STAT. ANN. § 324.021(9)(b)(2). Section 324.021(9)(b)(2) states:

> The lessor, under an agreement to rent or lease a motor vehicle for a period of less than 1 year, shall be deemed the owner of the motor vehicle for the purpose of determining liability for the operation of the vehicle or the acts of the operator in connection therewith only up to $100,000 per person and up to $300,000 per incident for bodily injury and up to $50,000 for property damage. If the lessee or the operator of the motor vehicle is uninsured or has any insurance with limits less than $500,000 combined property damage and bodily injury liability, the lessor shall be liable for up to an additional $500,000 in economic damages only arising out of the use of the motor vehicle. The additional specified liability of the lessor for economic damages shall be reduced by amounts actually recovered from the lessee, from the operator, and from any insurance or self-insurance covering the lessee or operator. Nothing in this subparagraph shall be construed to affect the liability of the lessor for its own negligence.

*Id.*

"The [Florida] legislature enacted section 324.021(9)(b), Florida Statutes, in order to limit [vicarious] liability and to shift responsibility for damages arising out of motor vehicle accidents from innocent owners and lessors of motor vehicles to those at fault." *Lewis v. Enter. Leasing Co.*, 912 So.2d 349, 351 (Fla. 3d DCA 2005) (citing *Sontay v. Avis Rent-A-Car Sys., Inc.*, 872 So.2d 316, 319 (Fla. 4th DCA 2004)). *See also* Fla. H.R. Comm. on Judiciary HB 775 (1999), Staff Analysis (final June 2, 1999) at 21 (stating that the legislative intent of the bill which amended section 324.021 included the goals of reducing payments by innocent third parties and shifting emphasis toward responsibility based upon fault).

"Two interrelated inquiries arise when determining whether statutes should be retroactively applied. The first inquiry is one of statutory construction: whether there is clear evidence of legislative intent to apply the statute retrospectively. . . . If the legislation clearly expresses an intent

15

that it apply retroactively, then the second inquiry is whether retroactive application is constitutionally permissible." *Metro. Dade County v. Chase Fed. Hous.*, 737 So.2d 494, 499 (Fla. 1999) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *Hassen v. State Farm Mut. Auto. Ins. Co.*, 674 So.2d 106, 108 (Fla. 1996); *State Farm Mut. Auto. Ins. v. Laforet*, 658 So.2d 55, 61 (Fla. 1995); *Dep't of Transp. v. Knowles*, 402 So.2d 1155, 1158 (Fla. 1981); *Arrow Air, Inc. v. Walsh*, 645 So.2d 422, 425 n.8 (Fla. 1994)). "The general rule is that in the absence of clear legislative intent to the contrary, a law affecting substantive rights, liabilities and duties is presumed to apply prospectively." *Metro. Dade County*, 737 So.2d at 499. "[R]equiring clear intent assures that [the legislature] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Id.* (quoting *Walsh*, 645 So.2d at 425). Because clear evidence of legislative intent to apply the provision at issue retroactively is lacking, the statute should be applied prospectively.

Given the *Erie* guess analysis conducted by this Court pursuant to the Fifth Circuit's remand, Hertz's summary judgment motion is denied because Hertz has not met its initial burden.[3] Similarly, because this Court finds that Florida would hold Hertz vicariously liable, Hertz's motion for judgment is denied and Cates' motion for judgment is granted. Therefore, Hertz is jointly and severally liable for the judgment entered against Creamer, including all prejudgment and postjudgment interest to which the plaintiff is entitled. *Gordon*, 242 So.2d at 487 ("[U]nder the dangerous instrumentality doctrine prevailing in Florida, both the owners and operators of motor

---

3. Summary judgment should be granted if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing FED. R. CIV. P. 56(c)). A party seeking summary judgment bears the initial burden of showing the absence of genuine issue for trial. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

16

vehicles are jointly and severally liable for the damages resulting from the negligent use or operation thereof.").

### III.

For the reasons stated above, the Cates' motion (doc. 113) is GRANTED and Hertz's motions (docs. 29 & 127) are DENIED.

So ordered this 25th day of February, 2008.

_____
JERRY BUCHMEYER
UNITED STATES DISTRICT JUDGE